# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELLYCE D. RUMICK | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 2403 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY AND LIBERTY MUTUAL | ) |
| HOLDING COMPANY, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Ellyce D. Rumick purchased a homeowners' insurance policy with HomeProtector Plus expanded replacement insurance coverage allegedly from Defendants Liberty Mutual Insurance Company ("LMIC") and Liberty Mutual Holding Company, Inc. ("LMHC"). Rumick claims that she paid unnecessarily high premiums for excessive expanded replacement coverage, despite LMIC and LMHC's representations that the policy provides protection tailored to each individual home. After the Court dismissed her initial complaint for lack of subject matter jurisdiction, Rumick filed an amended complaint on behalf of a putative class against LMIC and LMHC, bringing claims for breach of contract, negligent misrepresentation, and violations of various state consumer protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq*. LMIC and LMHC have filed a motion to dismiss Rumick's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court grants Defendants' motion to dismiss in part and denies it in part. Specifically, the Court finds that Rumick cannot bring her breach of contract claim against

LMIC and LMHC because they are not parties to her insurance policy and Rumick has not adequately pleaded an alternate basis to hold them liable for any breach of that policy. Moreover, she has not pleaded a basis to support her breach of contract claim based on the breach of duty of good faith and fair dealing or her negligent misrepresentation claim. Although, she fails to properly allege an ICFA deceptive practices claim, Rumick may proceed on her ICFA unfair practice claim based on a theory that LMIC and LMHC violated public policy by making misrepresentations about the terms of the policy Rumick obtained.

## BACKGROUND[1]

LMIC has offered insurance products since the early 1900s, currently operating as part of a mutual holding company structure under its parent, LMHC. LMIC offers personal insurance products, including automobile, homeowners, and property-casualty insurance throughout the United States under the Liberty Mutual and Safeco Insurance brands. LMIC is the parent corporation of a network of subsidiaries, including Liberty Insurance Corporation ("LIC"), an Illinois corporation, and other entities that operate in local markets throughout the United States. LMIC controls a majority of the Board of Directors of its subsidiaries, with the same individual serving as chairman, president, and chief executive officer of LMHC, LMIC, and LIC. LMIC also has management and services agreements with these subsidiaries, providing office space, supplies, and personnel employed by LMIC to the subsidiaries.

---

[1] The facts in the background section are taken from Rumick's amended complaint and are presumed true for the purpose of resolving LMIC and LMHC's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.*

LMHC and LMIC have a network of sales representatives, insurance agents, and brokers that sell their products pursuant to standardized marketing and sales practices. With respect to homeowners' insurance, LMIC and LMHC advertise on the webpage, libertymutual.com, registered to LMIC, that the following factors determine the rate an insured pays for homeowners' insurance coverage:

> (a) The characteristics and the potential cost of replacement of your home and additional structures on the premises; (b) The location of your home, which includes its proximity to fire protection, as well as local statistics on burglaries, weather events, and other potential risk factors; (c) The deductible amount you choose on your policy; and (d) Ensuring that your home has proper protection, like deadbolt locks, a security system, and smoke detectors and alarms.

Doc. 40 ¶ 41. The webpage goes on to advertise additional protection available by purchasing HomeProtector Plus expanded replacement coverage, which "provides [the insured] with the full replacement cost of your belongings, additional living expenses while your home is being repaired, and more." *Id.* ¶ 42. LMIC and LMHC also advertise that "because we know that every home is different, Liberty Mutual provides homeowners' insurance coverage tailored to your needs so that you, your family and your home are properly protected at the right price." *Id.*

Rumick, who lives in Illinois, learned of LMIC and LMHC's homeowners' insurance promises and thereafter purchased a LibertyGuard Deluxe Homeowners Policy with a HomeProtector Plus expanded replacement cost coverage endorsement (the "Policy") for the period from September 13, 2016 to September 13, 2017. The Policy was a continuation of her homeowners' insurance coverage, which began around 2014, and which Rumick purchased from a LMIC and LMHC insurance producer in Phoenix, Arizona who was not employed by LIC or licensed to sell insurance within Illinois. Rumick also renewed the Policy for the period from September 13, 2017 to September 13, 2018. The Policy explains the limits of Rumick's

3

coverage, stating that, with the HomeProtector Plus coverage, she receives replacement cost value coverage for the dwelling, other structures on the property, and her personal property based on the actual replacement cost as well as the policy limits stated on the declarations page of the Policy.

The application Rumick signed in 2014 sought only general information about her property. In the summer of 2016, Rumick received a new policy declarations page detailing the coverage she would receive for the upcoming policy period, which reflected a premium increase and different coverage limits than for the prior year (in which she had received several conflicting statements as to her coverage limits and premium amounts). Rumick then wrote to LMIC and LMHC complaining about the increased premium, after which she received additional policy declarations reflecting reduced premiums and reduced coverage limits. When Rumick inquired about the features listed for her property, she learned LMIC and LMHC had noted that her property had two kitchens, which it does not.

Rumick receives bills for her Policy from Liberty Mutual Group, with instructions to make checks payable to this entity. The application she submitted in 2014 and the Policy have Liberty Mutual branding and the words "Liberty Mutual Insurance," similar to that found on the websites libertymutual.com and libertymutualgroup.com. Individuals report claims though the Liberty Mutual website, and Rumick submitted her application to Liberty Mutual Group. But both the Policy and application indicate that the Policy is "provided and underwritten by Liberty Insurance Corporation (a stock insurance company), Boston, MA." Doc. 48-1 at 4; Doc. 48-2 at 3.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

ANALYSIS

I.   Breach of Contract Claim (Count I)

   A.   The Parties to Rumick's Insurance Policy

First, LMIC and LMHC argue that Rumick's breach of contract claim fails because LIC, and not LMIC and LMHC, provided the Policy to Rumick, meaning that Rumick's breach of contract claim should be directed against LIC and not them.  Indeed, the Policy and the application both state that the Policy is "provided and underwritten by Liberty Insurance Corporation."[2]  Doc. 48-1 at 4; Doc. 48-2 at 3.  Nowhere do LMIC or LMHC's corporate names appear on the Policy itself to indicate that they, and not LIC, are parties to a contract with Rumick.  But Rumick responds that she has pleaded sufficient factual allegations to allow the Court to plausibly infer that LMIC and LMHC are parties to the Policy.  For example, she points to signatures on the Policy declarations page by corporate officers of LMIC and LMHC, only one of whom also has a role with LIC, as evidence that LMIC and LMHC are proper parties.  She also relies on her allegations that she receives bills from and pays premiums to Liberty Mutual Group, not LIC, and that the application and Policy contain branding for Liberty Mutual and the words "Liberty Mutual Insurance."  But despite the broader branding of documents with

---

[2] Rumick incorrectly argues in her response that the Policy "makes no statements about which entity is providing the insurance or on behalf of which entit(ies) these individuals are signing the insurance contract."  Doc. 51 at 12.  Although Rumick may be attempting to split hairs here, distinguishing between the Policy declarations page and the remainder of the Policy, the Court does not find this distinction persuasive.  The declarations page forms part of the Policy and sets forth the insured, what risks are covered, the policy limits, the policy period, and, here, the entity providing the insurance.  *See Progressive Premier Ins. Co. of Ill. v. Kocher ex rel. Fleming*, 932 N.E.2d 1094, 1098, 402 Ill. App. 3d 756, 342 Ill. Dec. 633 (2010) ("The declarations page—which lists the types of coverage provided and the policy limits and premiums for each—is a part of the insurance contract."); 16 Williston on Contracts § 49:25 (4th ed. 2018) ("The contents of a declarations sheet, or the declarations page, of an insurance policy is regarded a part of the insurance contract.  The declarations page is the one page of the policy likely to be read by the insured, and contains the terms most likely to have been requested by the insured; it therefore is held to define the coverage afforded the insured and to control over more restricted terms contained in the body of the policy." (footnotes omitted)).

Liberty Mutual's name and the administration of payments by the Liberty Mutual umbrella of companies, the Policy clearly indicates that Rumick contracted with LIC, not any other Liberty Mutual entity.[3] Therefore, she must direct any breach of contract claim against LIC, not LMIC or LMHC, unless she has alleged a basis to hold them liable as non-parties to the Policy. *See Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) ("It goes without saying that a contract cannot bind a nonparty." (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). The Court turns to this issue next.

      B.      **Potential Non-Party Liability**

Rumick alternatively contends that LMIC and LMHC are liable on her breach of contract claim because they directly participated in the wrongdoing or under an alter ego theory. Illinois law provides that "a parent company may be liable for the alleged wrong of its subsidiary when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management.'" *Id.* (quoting *Phillips v. Wellpoint Inc.*, No. 10-cv-00357-JPG, 2012 WL 6111405, at *9 (S.D. Ill. Dec. 10, 2012)). But Illinois courts have only applied the direct participant liability theory to tort claims or violations of statutes, not to claims for breach of contract, as Rumick asks the Court to do here. *See id.* at 651–52 (refusing to extend the direct participant liability theory to breach of contract claims); *Boston Fish Mkt., Inc. v. EMS-USA Insulated Doors, Inc.*, No. 12-C-6751, 2013 WL 2421744, at *2–4 (N.D. Ill. Jun. 3, 2013) (declining to extend direct participant liability to contract cases until Illinois state courts do). Therefore, this theory does not help Rumick in her attempt to assert a breach of contract claim against LMIC and LMHC.

---

[3] Although Rumick claims that she has alleged factual support to support that she purchased the Policy from LMIC and LMHC, making them parties to the Policy, where a document like the Policy directly contradicts those allegations, the document controls. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

To pierce the corporate veil and hold LMIC and LMHC liable on the Policy entered into by LIC, their subsidiary, Rumick must allege (1) a unity of interest and ownership such that the separate personalities of the corporation and the subsidiaries no longer exist, and (2) adherence to the fiction of separate corporate existence would lead to injustice or inequity. *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). Illinois courts examine a series of factors to determine if a unity of interests exists, including:

> inadequate capitalization; failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or other entity to creditor detriment; failing to maintain an arm's-length relationship among related entities; and whether the corporation is a mere façade for a dominant owner.

*Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012). No one factor is determinative, with the circumstances of each case driving the inquiry. *Id.*; *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir. 1991).

The Court may pierce the corporate veil in a breach of contract case, although courts often require "additional compelling facts" to do so. *See UIRC-GSA Holdings Inc. v. William Blair & Co.*, 289 F. Supp. 3d 852, 858–59 (N.D. Ill. 2018) (collecting cases). Rumick alleges that LMIC controls a majority of the Board of Directors of LIC, who at all relevant times operated under the direction and control of LMIC and LMHC. All three entities allegedly share common corporate administrative headquarters, with LMIC providing office space, computers, office equipment, and personnel to LIC. Rumick also claims that LMIC has numerous management and servicing agreements in place with LIC, which relate to claims handling, credit and collections, and sales and underwriting, among other things. All subsidiaries of LMIC and LMHC belong to an inter-company reinsurance pooling arrangement, of which LMIC is the lead insurer. And Rumick alleges that LMIC and its subsidiaries, including LIC, file consolidated

8

federal income returns and financial disclosures under the unified "Liberty Mutual Insurance Group" umbrella. Rumick contends that these allegations suffice at the pleading stage to plausibly allege a unity of interest sufficient to pierce the corporate veil.

Although Rumick has included some allegations to suggest a unity of interest, the Court does not find them sufficient for a breach of contract case, particularly where she has not suggested in any way why adherence to the fiction of a separate corporate existence would promote injustice or inequity. *See Sears Home Appliances Showrooms, LLC v. Appliance Alliance, LLC*, No. 15-cv-4414, 2017 WL 839483, at *4 (N.D. Ill. Mar. 3, 2017) (dismissing claims based on alter ego theory where counter-plaintiffs failed to allege any fraud or injustice that would occur by adhering to separate existences, noting that "[m]ere allegations of a desire to recover from another corporation's assets, without more, are insufficient"); *RehabCare Grp. E., Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *3 (N.D. Ill. Nov. 8, 2007) (dismissing claims based on alter ego theory of liability where plaintiff failed to allege that adhering to corporate fiction would sanction a fraud or injustice); *Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302, 308 (N.D. Ill. 1990) (refusing to find alter ego theory adequately pleaded based on mere allegation of shared office space, staff, and directors without additional suggestion of fraud or injustice); *cf. UIRC-GSA Holdings Inc.*, 289 F. Supp. 3d at 860–61 (finding sufficient allegations of injustice based on claim that the corporate parent was "attempting to avoid its contractual obligations . . . on the basis of the fiction of a corporate separation" between the parent and subsidiary). Although Rumick claims LMIC and LMHC should not be allowed to escape responsibility for their representations because they operate through subsidiaries, Rumick has not included any allegations to suggest that a claim against LIC would fail to do so. Therefore, at this stage, the Court cannot find that Rumick has adequately

alleged a basis to pierce the corporate veil to pursue her breach of contract claim against LMIC and LMHC.

## C. Covenant of Good Faith and Fair Dealing

Even if Rumick could pursue her breach of contract claim against LMIC and LMHC, she has not sufficiently alleged facts to allow such a claim to proceed. Rumick claims that LMIC and LMHC breached the implied covenant of good faith and fair dealing by setting the replacement cost value of coverage based on generalized information instead of individualized assessments of the insured's property. The obligation of good faith exists in every contract in Illinois, guiding the construction of explicit terms in an agreement. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992). It is "essentially used as a construction aid in determining parties' intent, and 'vague notions of fair dealing' do not form the basis for an independent tort." *Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203, 218 Ill. App. 3d 261, 161 Ill. Dec. 71 (1991) (citations omitted). To allege a breach of the duty, Rumick "must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010). But the duty of good faith "'cannot overrule or modify the express terms of a contract' [or] be used to read obligations into a contract that do not exist." *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C 1819, 2013 WL 6671796, at *3 (N.D. Ill. Dec. 18, 2013) (quoting *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104, 276 Ill. App. 3d 355, 212 Ill. Dec. 750 (1995)); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003) ("Illinois law holds that parties to

a contract are entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract.").

Here, Rumick claims that LMIC and LMHC abused their discretion by charging unreasonable premiums based on allegedly false pre-contractual advertisements. But Rumick does not connect this alleged abuse to any of the terms of her Policy, instead asking the Court to read obligations into it that do not exist. *See Nat'l Tech., Inc.*, 2013 WL 6671796, at *3. More importantly, the duty of good faith and fair dealing does not apply to precontractual representations, such as those on which Rumick relies, and instead only applies to the conduct of the parties after they entered into a contract. *See RBS Citizens, N.A. v. RTG-Oak Lawn, LLC*, 943 N.E.2d 198, 207, 407 Ill. App. 3d 183, 347 Ill. Dec. 908 (2011) ("[A]ny allegations relating to the formation of the Note here do not implicate or violate the duty of good faith and fair dealing."); *Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 162, 376 Ill. App. 3d 282, 315 Ill. Dec. 156 (2007) (rejecting argument that defendants breached duty of good faith and fair dealing where defendants made pricing decisions "before they offered—and Gore accepted—the resulting premium prices, before the parties entered into legally binding contracts, and before any duty of good faith and fair dealing could have arisen under those contract"). Therefore, this basis for a breach of contract claim fails. And because Rumick does not set forth any other basis for a breach of contract claim nor has she named a proper defendant for such a claim, the Court finds dismissal of this claim appropriate.

## II.     Negligent Misrepresentation Claim (Count II)

Rumick asserts a negligent misrepresentation claim based on LMIC and LMHC's alleged misrepresentations about the HomeProtector Plus expanded replacement cost coverage. LMIC and LMHC argue that the economic loss doctrine bars this claim. The economic loss doctrine

"bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448–49, 91 Ill. 2d 443, 61 Ill. Dec. 746 (1982)). Illinois recognizes three exceptions to the economic loss doctrine: "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333–34, 218 Ill. 2d 326, 300 Ill. Dec. 69 (2006). By its terms, the economic loss doctrine also does not apply to extracontractual duties. *See Golf v. Henderson*, 876 N.E.2d 105, 113, 376 Ill. App. 3d 271, 315 Ill. Dec. 105 (2007).

Rumick contends that the economic loss doctrine does not bar her claim because she meets the second exception and because LMIC and LMHC owed her an extracontractual duty under 735 Ill. Comp. Stat. 5/2-2201(a), which requires insurance producers to use ordinary care in "renewing procuring, binding, or placing the coverage requested by the insured or proposed insured." Section 2-2201(a) gives rise to an exception to the economic loss doctrine. *See Mercola v. Abdou*, 223 F. Supp. 3d 720, 730 (N.D. Ill. 2016). Under the Illinois Insurance Code, § 2-2201(a) applies only to "insurance producers." Although that term is not defined in § 2-2201, the Illinois Supreme Court carefully considered its intended meaning and concluded that the "best evidence of the legislature's intent in using the term 'insurance producer' is the statutory definition in section 500–10 of the Insurance Code." *Skaperdas v. Country Cas. Ins. Co.*, 28 N.E.3d 747, 757, 2015 IL 117021, 390 Ill. Dec. 94 (2015). Section 500-10 of the

Insurance Code defines an insurance producer as a "person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 Ill. Comp. Stat. 5/500-10. An insurer, on the other hand, is "a corporation, company, partnership, association, society, order, individual or aggregation of individuals engaging in or proposing or attempting to engage in any kind of insurance or surety business, including the exchanging of reciprocal or inter-insurance contracts between individuals, partnerships and corporations." 215 Ill. Comp. Stat. 5/2(e). Here, LMIC and LMHC do not qualify as insurance producers, but Rumick has alleged that she bought her Policy from a LMIC and LMHC insurance producer, who acted as an agent for LMIC and LMHC. Because the agent may have owed Rumick a duty under § 2-2201, under the doctrine of *respondeat superior*, LMIC and LMHC may be held liable for that agent's breach of the duty. *See Skaperdas*, 28 N.E.3d at 758 (refusing to dismiss insurer who claimed it did not owe duty to plaintiffs where court found agent owed duty under § 2-2201 and the insured could be held liable for the agent's actions).

But LMIC and LMHC argue that even if Rumick can avoid the economic loss doctrine, she has failed to sufficiently allege the elements of a negligent misrepresentation claim, specifically, a false statement of material fact. To state a claim for negligent misrepresentation, Rumick must allege "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007) (quoting *First Midwest Bank, N.A.*, 843 N.E.2d at 334–35). Rumick contends that LMIC and LMHC falsely represented that, by purchasing

13

HomeProtector Plus expanded replacement cost coverage, she would receive coverage individually tailored to the actual replacement costs of her home and personal property. But as LMIC and LMHC point out, the Policy makes clear that her coverage was subject to policy limits. This causes Rumick's claim to fail at this stage: "[a]s long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent inducement to invalidate contracts." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574–75 (7th Cir. 2001). Rumick has not suggested any reason for the Court to excuse her ignorance of the terms of the Policy, indeed barely even addressing the elements of the negligent misrepresentation claim in her response. The Court therefore dismisses this claim for failure to plead the required elements.

### III.     ICFA Claim (Count III)

To state an ICFA claim, Rumick must allege (1) a deceptive or unfair act or practice by LMIC and LMHC, (2) LMIC and LMHC's intent that Rumick rely on the deceptive or unfair practice, (3) the deceptive or unfair practice occurred in the course of conduct involving trade or commerce, and (4) LMIC and LMHC's deceptive or unfair practice caused Rumick actual damage. *See Wigod*, 673 F.3d at 574; *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Rumick may recover for either deceptive or unfair conduct, and she proceeds under both theories. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201 Ill. 2d 403, 266 Ill. Dec. 879 (2002). A deceptive practices claim must meet Rule 9(b)'s heightened pleading standard, while an unfair practices claim need not because it is not based on fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

14

A.      **Deceptive Practices**

First, the Court notes that Rumick has not stated a deceptive practices claim with the required particularity. She refers generally to "Liberty's" misrepresentations and omissions, without identifying whether LMIC or LMHC engaged in the deceptive practices, treating the two entities as one for all intents and purposes. And while the Court admits that the corporate structure of LMIC and LMHC and its subsidiaries appears muddled, Rumick nonetheless must better identify the alleged perpetrator of the wrongdoing to meet Rule 9(b). *See McNeal v. J.P. Morgan Chase Bank, N.A.*, No. 16 CV 3115, 2016 WL 6804585, at *6 (N.D. Ill. Nov. 17, 2016) (plaintiff failed to state ICFA claim in conformance with Rule 9(b) where she referred to three different JPMorgan Chase entities and Fannie Mae jointly as Chase).

The Court also finds that Rumick has failed to adequately allege a deceptive act or practice. Under ICFA, "a statement is deceptive if it creates a likelihood of deception or had the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The Court must consider the alleged deceptive act "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). Here, Rumick asserts that LMIC and LMHC assigned excessive replacement costs and excessive premiums without any relationship to the actual, individualized characteristics of the insured property, instead using generic information to provide coverage at a set limit. She points to facts that she claims influenced how LMIC and LMHC allegedly set the replacement cost values for her Policy that had no tangible relationship to the individual characteristics of her property, including erroneously listing two kitchens, inflated valuations, arbitrary fluctuations in premium and replacement value levels, and LMIC and LMHC's failure to make on-site visits to verify the accuracy of replacement cost valuations. Rumick also argues that LMIC and LMHC's inability

15

to provide a specific breakdown of the calculation for the recommended replacement cost of a home shows the deceptive nature of their statement that HomeProtector Plus coverage provides appropriate replacement cost coverage. But Rumick's Policy clearly sets forth the contours of the coverage provided; read in connection with the Policy and the application form, which asks only generic questions about the insured's property, the advertisements concerning the HomeProtector Plus coverage do not amount to the promises for individualized coverage that Rumick claims. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739–40 (7th Cir. 2017) (finding that, at most, insurer could have been clearer in providing information about its ability to raise premiums). Instead, the Policy sets forth the scope of coverage; to the extent Rumick misconstrued the representations about coverage made in advertisements, she has failed to sufficiently allege how her interpretation remained reasonable in light of the Policy language so as to make LMIC and LMHC's actions deceptive. Therefore, she cannot proceed on her deceptive practices claim as currently alleged.

### B. Unfair Practices

A practice is considered unfair under ICFA if it (1) violates public policy, (2) is "so oppressive that the consumer has little choice but to submit," or (3) causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). A plaintiff need not demonstrate all three criteria in order to succeed; rather, a practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 960 (quoting *Cheshire Mortg. Serv., Inc. v. Montes*, 612 A.2d 1130, 1143–44 (1992)).

In her complaint, Rumick alleges that LMIC and LMHC's actions violate public policy and her right to be free from unfair and deceptive practices in the procurement of insurance

contracts. She elaborates on this in her response to the motion to dismiss, claiming that, as the Seventh Circuit found in *Newman v. Metropolitan Life Insurance Co.*, LMIC and LMHC's actions amounted to a bait-and-switch tactic that violates § 149(1) of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/149(1), which forbids insurance companies from misrepresenting the terms of their policies.[4] *See* 885 F.3d 992, 1002 (7th Cir. 2018) (finding that plaintiff had sufficiently alleged an ICFA unfair practices claim where defendant's brochure and policy did not clearly disclose the possibility of a premium increase after the insured turned sixty-five). Here, taking Rumick's allegations as true, Rumick has sufficiently alleged an apparent bait-and-switch tactic that may violate § 149(1), advertising that the HomeProtector Plus coverage is "tailored to [the insured's] needs" and provides the "full replacement cost of [the insured's] belongings," when in reality, the Policy provides coverage to a certain limit and the limits are based on generic, not specific, information about the insured's property. The Court makes no merits determination as to whether these statements amounted to actual misrepresentations, but in light of *Newman* and § 149(1), the Court finds that Rumick may proceed with her ICFA unfair practices claim.

---

[4] LMIC and LMHC claim that Rumick cannot expand on her allegations concerning public policy in her response, but here, where her response is consistent with her allegations and only expands on them, the Court finds it appropriate to consider her more specific citation to a statute at this time. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part LMIC and LMHC's motion to dismiss [47]. The Court dismisses the breach of contract (Count I), negligent misrepresentation (Count II), and ICFA deceptive practices claim without prejudice. Rumick may proceed only on her ICFA unfair practices claim.

Dated: August 6, 2018

_____
SARA L. ELLIS
United States District Judge